09-66 People v. Fisher Mr. Keefe, do you want to begin? I'm going to go first and then Mr. Keefe after that. Mr. Keefe. Yes, sir. It's an important point, Mr. Fisher. In his speech, I hadn't argued a criminal appeal in a long time. It's been a long time. I've been asked to read these briefs. Frankly, I was asked if I could participate. And I asked if I could participate because the Constitution is important. It really is important. We hear about constitutional arguments all the time. Everybody wants to try out the Constitution. The truth is that it's easy to say something is constitutionally correct. It's hard to find a set of facts where, really, the Constitution is implicated. And it's very hard to find a set of facts where the Sixth Amendment is implicated. And when I read these briefs, I thought, you know, by the way, here's a set of facts where the Constitution is really implicated. And in order to persuade your audience that, in fact, the Constitution is implicated in this case, is that I think there are two questions that have to be addressed. And the first question is this. With the proper record, which means this record, the record before this court, now, not the record that was before this court in 2005, but with the proper record, this record, was there a reasonable probability that this court's opinion back in 2005 would have been different? That's the first question. If the answer to that question is yes, then with all due respect, this is an unagreed. And then the answer to the second question is that it was subjectively reasonable that prior counsel did not give you the record that you have instead, did not give you that record back in 2005. And if the answer to that question is yes, then I've actually, and I think I'm in the hole. But that's going to be for you to decide. I really believe that if we take a look at this evidence, that we have to recognize one important issue. The fundamental fairness of the proceedings, the previous proceedings, doesn't involve anything that happened in the trial court. The fundamental fairness involves what happened in this court in 2005. It's what happened in this court in 2005. And in 2005, this court got it right. Now, how can I say that you got it right? You got it right because you got it right based upon the record that you had in front of you in 2005. In the record that you had in front of you in 2005, you only knew one thing. You knew that one juror had testified that another juror had reported that Mr. Fisher had been previously acquitted on some charges in Jackson County. That's all he knew. That is all this court knew. And furthermore, this court knew, quote, he was not sure where the charges pertained to or nothing, close quote. That's what you knew. And your opinion in 2005 cries out for more information, more information than you didn't have because your Rule 23 opinion says, quote, the defendant's motion for new trial based on you showing that a juror had overheard a television newscast regarding prior charges and communicated that to the jury deliberation. The defendant's motion was based on you showing that a juror had overheard a television newscast that mentioned that the defendant had other charges in Jackson County. According to the record, the juror did not overhear or communicate the nature of those charges. That's not true, but that's all you knew. And in addition to that, at the end, your opinion was so clear. Tell us all, from the record before us, we cannot show you the probability of a prejudice, and this is critical, particularly when there is nothing in the recording indicating that the jurors ever heard the nature of the charges. That was what you had before you. That wasn't true. It wasn't true, and the reason is that what the record now before us is this. Now what the record before us is a juror announced in the jury room he had seen a news report the night before that the defendant had previously been formally charged with sexual misconduct in Jackson County, which had been dropped. That's before you. Another juror commented, I knew he had done this before. That's not before you. That's in this record. Let me ask you on that. Yes, sir. Can we properly consider that remark of the other jurors? Yes, sir. How? Because it was subject to an evidentiary hearing. It was subject to discovery depositions that were taken. Correct. That were not supervised, that objections were made and never ruled on. Correct. And who had the burden of getting those objections ruled on? Okay. No, I'm going to answer it. Actually, I think it's a great question. Both sides did because they both made the same objection. Correct. And neither of them asked for a ruling. And now we've got a record with at some point I may ask both of you what actually is admissible because there is a presumption. They told the trial judge take the objections with the depositions. Are we to presume then that the trial judge normally follows the law and the evidence? Well, under the law, we get a bench trial, not a jury trial, in a bench trial. Correct. So it kind of gets us back to the beginning. Correct. But I don't want to confuse it too much, which I have. But are you about to say that anything in that discovery deposition the trial court and us can rely on or base our decision on anything, even if it's truly objectionable? Because, and the answer to that question is yes, because of just that reason. If, in this instance, someone wanted to object to a decision in the discovery deposition case, in a simple case. In a simple case. Right. But in a simple case, judges, in objections that are made in a simple case, it is the burden of the objector to bring those to the attention of the trial court and get a ruling on them. Now, typically, in a trial lawsuit, you're wondering, where do we get them? Well, we get them either pre-trial. We're here ready to try the case. Or during forced trial. It's just that, for example, in simple cases, if I have a deposition of a party, I would say, I agree with this. This is an issue. And then the other side might say, well, I'm going to object to that. And then we put it across the court. We rule whether I have to read it or whether I did not get to read it. In a simple case, instead of objections to the discovery deposition, simple cases, objections to the form of a question, must be made at the time, or they are otherwise waited. Objections as it relates to materiality, judge, is to see what happens with those. Those are preserved. Preserved for what? Preserved for ruling by the trial court. Preserved for ruling by the trial court, and who did you get? Those who are taking issue with the evidence. We're not taking issue with the discovery deposition. So there was no agreement that the parties submitted the discovery depositions, and allowing the court to consider only the admissible evidence that's contained within the case? I'm not aware of any such agreement. Anyway, I think the record is that they submitted it, but the state was subject to the objection, and there was no ruling on the objection. The prosecutor at the time said he potentially wants to take that approach, but at the time, it was only the trial court that considered the objection. There was no ruling on the objection. Right. I don't want to take any more of your time. Go ahead. Hold on. But having said that, the only other thing I would point out is that it's based on the record. And really, Your Honor, we do have questions. Go ahead. The other thing is, of course, you said the jury didn't discuss. There's not much question. The jury discussed the prior sex charge for three minutes, or thereabouts. And the reality is that, at a minimum, this is the evidence. Now, there's no dispute that the following is evidence. The clip, the news clip itself, was meant for the truth. The marriage certificate was admitted, though, and it is in evidence. Okay? It is in evidence. And what the news clip said was, not to prove the truth of it, but instead to show what was heard. The news clip said this girl, the previous public victim, was 12 years old when she alleged that Mr. Fisher sexually molested her not once, but twice. Henry Fisher manages and owns several rental properties in the Carbondale area, mainly college-aged students. He was charged with home invasion and sexual assault by one of his female tenants in 1994. These charges were later dropped. Now Fisher is back in court facing sexual molestation charges again. Now, there's no question, Your Honor, regardless of what rulings there were on the depositions, there's no question that one of the jurors was criminal and brought that knowledge into the jury room. He wouldn't have that knowledge if all of the other jurors were survived before he was. Now, that's what this record shows. That's what this record shows. And, of course, what I have to ask is this, honestly, Your Honor, is to say, what would have happened if during the course of that trial, let's go back to the trial version, if during the course of that trial, you said, when that juror came in and said, hey, you know, I saw something on TV last night. Right? Exactly. You said, that's what it's all about. I saw something on TV last night that Mr. Fisher was previously charged with a sex offense, but it was dropped. Now, at that point, what was the duty of the other jurors? Wasn't it their duty to get a phone or somebody to knock on the door and say, come on, bring your pail, let's go in here? And what would have happened if the bailiff had come in and communicated that to the trial jury? Back at the time of that trial, what would have happened? The missed trial. And the reason I know it would have been a missed trial is because the judge in Williamson County would have been guided by the jurisprudence of this court, and the jurisprudence of this court has written prolifically on the proof of prior criminality and the prejudice of that. Quote, people v. McNaughton carries the overwhelming ability to dominate decision-making, enslave people to defect regardless of what the actual level is to support the charged conduct in establishing. Again, going from this point, turn to the point of Madison v. United States, it's not that the evidence is irrelevant. It's what? It's too relevant. It over-persuades people. And finally, people v. Lemon, there is simply nothing better than full exposure of an accused human being. Now, let me ask you this, Mr. Lewis. Since we're going to consider all these depositions, how do we consider the fact that the jury foreman immediately said we can't consider any of this evidence because of the instructions we were given? Each of the jurors said they followed the law at the end of their deposition, and there's a presumption they followed the jury instructions and they got IPI Criminal 101, which said they couldn't consider this. Since all that's going to be in this, how does that fit in? Your Honor, I would suggest that my response to that would be this 1423 order written back in 2005 where you said, quote, I'm not going to share it. No, Chapman said. In the second rule 23? No, yeah. That was me. You're going to hold my words against me now. I think that he's got it right. Do we have a problem with it being a 23? You know, I don't think so. I think it's still a lawful case, and I think we're dealing with this. But that's a good question. But here's what you said, Your Honor. You said, quote, because the actual effect of the exposure on the minds of the jurors cannot be proven, the standard to be applied is whether there is such a probability of prejudice resulting that the trial is being inherently active in the process. That's the whole problem. Now, that's where they made their mistake, and with complete respect to the judges, that's where he made his mistake. Because what they did and what you admonished them not to do is just that they got into the state's brief talks with all those three members. Oh, they're smart when they say don't do it. Oh, let's not think about the power. Who's not thinking about the power? I mean, that's the point. There are certain kinds of evidence. Once it gets in the room, it won't. Because what we want to prohibit it from doing, Judge, is that. And they all said they could follow instructions. For heaven's sakes, who in the world doesn't think that they thought they did something wrong? One guy says, I didn't tell you the whole story. I want to get the other guy in trouble. The other nine people refused to talk. I mean, Judge, everybody knew that once that got in the room, he won't. And so the answer to your question is that the jury form is that attitude. What if it was horrible? What if it was good? What if it was wonderful? It doesn't make any difference. This court has said this stuff is poison. And once it gets in the room, is if the room is contaminated, then they know that. And to try and get into this argument of what it is to commit a misdemeanor, only six people remembered. We all said that we made the decision based upon what? If that was true, then how come one of them didn't say that they were? Hey, this guy just watched a TV show that he saw last night. And it would have been a misdemeanor. And we wouldn't be. If the guy gets convicted the second time around. But guess what? He was entitled to a fair trial. And so for all of those reasons, and that's why this whole manifesto. It would have been mandatory for the trial to judge at that time to declare mistrial. I had no discretion. He couldn't have avoided hearing each of the jurors themselves and said, We didn't hear it or I heard it, but I didn't think about it. I was going to follow your instructions. Your Honor, I understand what you're saying. And I would just say this. I would say that if the trial judge looked at this court's jurisprudence, I mean, this court has always been consistent in its belief that proof of prior criminality, especially of a sexual nature, is an over-persuasion. I mean, an over-persuasion. So to go back to what Justice Dunwoody said, Justice Dunwoody said, Well, now, should we be listening here and taking note how, with respect to these discoveries that have been issued? One thing is irrefutable. This is what the music has said. And it is irrefutable. It is irrefutable. And some of it hurts. And some of it doesn't. Finish your thought. Okay. Judge, the only other thing I wanted to say was this. As to the second point, which is ineffective assistance to counsel, it's just that, just real briefly, number one, as the State points out, it's too generic. We're not asking this court to announce a rule that lawyers have a responsibility to interview jurors. What we are saying, though, is that a lawyer who paints a picture has a responsibility to repeat the picture. A lawyer who starts down a road has a responsibility to get to the end of the road. And most importantly, if there is one thing which I believe speaks volumes to the ineffective assistance argument, it is this. This court ordered an evidentiary hearing. And this court ordered an evidentiary hearing because this court won the whole story. And now this court has told the whole story in the Constitution, respectfully, I believe, requiring that Mr. Fisher be given another by a judge. Thank you very much. Thank you. Thank you. Thank you. Good morning, Your Honor. I'm going to speak to the court and counsel. I want to talk about depositions first here a little bit. You know, it probably wasn't the best way to proceed in this case by doing depositions outside the control of the court, the judge. And I'd like to speak to some of what Mr. Keefe says. I do, however, want to express a little bit of confusion about what's being said here. I'd start just by framing what the constitutional standard is when we talk about information coming into the jury room, their consideration of it. It's an established principle of law that a reviewing court or any sort of court of review can consider the deliberate process of the jury. The tension here, of course, is that it's also permissible to introduce into evidence the fact that the jury was exposed to information that was outside what was presented to trial. In this case, the exposure related to a prior charge that the defendant had. I'll talk about that a little bit more in a moment. The way the Supreme Court settled this particular inquiry is to say that, well, any time a jury is exposed to information, it is prejudicial. It has to be, therefore, shown, however, that it wasn't something that affected the jury's wasn't the type of information that would affect the jury's processes to the extent that the defendant suffered an inherent lack of due process. And that is the probability and the prejudice here is a way to describe it in cases such as syllogy, Hoagley, and Holmes. Now, it's both a literal and an exact insanity. It's literal in the sense that you look at information as it's presented or as it's been given to the jury. It's exact to the extent that it is also something that must establish the probability of prejudice. Probability is not possibility or suggestion at all. So what the result of that is is a bit confusing because what we have is information, and information is never something in the real world that exists in a vacuum. It only exists in context of how a jury considers it. What the Supreme Court cases have said is that you can't look at how the jury considers it. You just have to look at the information. Now, I think perhaps I, and I don't think the defendant had to to some extent, sort of taken this information and kind of used it a little bit. And it's hard not to do so, particularly given the way the information was presented in this case. My confusion is a bit that I've been castigated page after page and replied before violating the tenets of Hoagley and syllogy, and yet here we're being told that all this stuff is admissible because we didn't advance some ruling or objection. Let me say it like this, because in the end, whatever happens in this case will almost certainly appeal to the Supreme Court. In the end, inquiry begins and ends with what the information was. Everything else is just static. So I don't think we can argue that, I don't think the defense can argue that, and I don't think this court can consider it. I think to do so would violate what the Supreme Court has said. Irrespective of how it was presented in the depositions, it doesn't make it any more relevant and approvative to the legal issue involved. And I think to consider it on that would be inviting probably a quick reversal by a higher court. So, that being stated, I do think that this court needs to look at the depositions narrowly in the sense of what was the information that the jurors perceived to occur. That's really the end and the beginning of what will constitute whether or not there was a probability of prejudice, such that the proceedings were inherently likely to be processed. Before I discuss the jurors very quickly, I do want to point to one thing. At the time of the post-conviction hearing, there were really two issues. There was a defendant's argument that there was a violation of the due process. There was a second argument that there was a claim of ineffective assistance of counsel, which itself implicates the two-pronged strictness here, the professional competence and also prejudice. The defendants here in appeal have gone strictly with the ineffective assistance of counsel argument. And that's fine. By doing so, I believe that the decision then will have to rely upon proof of both prongs, because that is what strictness requires. I have, of course, this argument, however, in our briefs basically discussing the court's ruling as a whole, because I think that the ruling on the prejudice, prong, and strictness, and the due process argument are really close to this. Now, when you do strip the facts to the core of what the jury heard, it's not really very good for consideration to parse out what they heard. Eleven jurors were proposed. There were five jurors, Sims, Sikorski, Smith, Walker, and Holmes, who testified the day of the hearing. The other six jurors heard something, and what they heard varied to some degree. Vicki Colombo heard a juror mention a sex offense, a prior sex offense. She can recall anything beyond that. Kenneth Wilk heard a prior charge of something or another, maybe even acquitted of a charge of a drug. John Heath, who was the one who supplied the affidavit, which kept the ball rolling in the prosecution process, he testified consistently with his affidavit that there was a prior sex offense that had been dropped. Fawniel Jackson, there was a charge of a sexual nature. I don't even remember if it was a male or a woman or whoever it was said. I just thought I remembered. Cheryl Pounder, she walked into a conversation about a charge being dropped against the defendant. She said it might have been sex-related. She couldn't really recall. And Stephen Newsome, who, although at the time of the post-trial motion hearing, couldn't recall anything regarding the type of offense it was, said it may have been a charge of a sex-related offense. That's where the sum of the arguments. So you've got five jurors hearing anything. Six of them heard kind of something. Now, let's talk about the audio feed for the broadcast of the television. This wasn't the place of the jury. They didn't hear this. Anything that the jury heard, anything that the jury perceived, came by way of what they testified to in these depositions. Did one juror hear that? No. No. Well, what happened was, and they're required to, they quote Fawniel Jackson, who they characterize as essentially agreeing with basically the sum total of everything that was said in this broadcast. However, if you really look at what his testimony was, he was very vague about it. It was a response to a yes question and a no question. The affidavit of, there's only one affidavit, so he's got, let's see. One of the jurors indicated that he had seen the television broadcast the night before and followed it. And there's a reasonable assumption with the broadcast that there's something wrong with that? There's nothing wrong. It's absolutely reasonable to assume that. I mean, that's the testimony. The point of the matter is that we're not going to deny that that had been brought up when we heard the testimony. However, we are denying, vehemently denying, that any of the jurors heard what the defendants here claimed what was the contents of that audio, that television recording to begin with. Throughout the defendant's brief, the characterizing of the jury burden is not only the defendant's prior sexual molestation charges or sexual assault charges or things of that nature. Not a single juror who testified in these depositions said anything close to that. It's not a irrelevant distinction. There's a big difference between a sex-related charge, I think, and sexual assault, sexual molestation, kids being molested. I mean, that's pretty heavy stuff. That, I think, plays very strongly into the question about the probability of prejudice. Now, is it okay if we come to the conclusion that 11 out of 12 of them weren't affected by this broadcast, but one of them was? Would one of them be enough? In a sense, you'd say affected in the scope of the parameters of probability of prejudice. Yes, the jury verdict is he. There could be no other result than that. It's not a question of the majority is disregarded. It's our position that it didn't affect any of the answers, but because just by looking at essentially the raw facts, and really, if I were to argue with all of the depositions and everything they said, my case would be extraordinarily easier. So I'm not doing myself any favor here. What I am assuring is that this court understands what the probability of a thing is because it's got to be that way because it's going to be looked at again. So, even under that standard, we have about approximately half the jurors in here, and the ones that did hear it, three heard something related to sex offense. Someone may have heard something, but that was about it. They didn't hear any particulars. They didn't hear any type of charge. It was all very vague. They didn't hear anything in terms of sexual assault or anything like that. Now, I want to talk about jurors. He stated that there was a mindset, quote, unquote, that it was a charge of child predator nature. I take that for what it's worth. I don't even know what a mindset means. He never came up and said that that's what anybody said. If that was a question that other people thought, it wasn't articulated upon assuming that was admissible anyway. I know John Hughes is not reading anything from the mind. Take it for what it's worth. But we do know that none of the jurors were able to identify exactly what this particular juror said. Now, I do need to note the fact that none of the jurors heard this in the context of an acquittal. Now, what the defendant's argument requires is that, well, the state, and this is a astonishing argument, that somehow the fact that the defendant was acquitted should have any bearing on this because I believe they stated in their brief that it's only for a jury to be exposed to something called private charges and private arrests and things of that nature. Well, I don't agree with that particular principle. I disagree with this application in this particular case. And the reason for that is that this isn't really just a private charge or a private arrest. It's also either an acquittal or a drop charge or something. So, what the jury hears, let me state this, in the defendant's brief, we are told a number of times that this jury is now looking at this information being presented and having come to the conclusion that this defendant is a creditor, he's a sexual creditor. I think that, looking at it that way, I think particularly heightens the role of the notion that the defendant had been acquitted because how does one become a creditor when they've been exonerated? These are gay people, okay? They don't know necessarily the nuances that mean anything about the difference between acquittal or a drop charge. All I hear is that the defendant has been accused before and is acquitted. So, it is not equally likely, if not more likely, that evidence of a prior drop charge or acquittal kept the defendant's own unfairly prosecuted or unfairly charged whereas if someone was a sexual creditor, we're going to go back and say, well, shoot, he did it once, there's a problem with it again. So, I do dispute the defendant's argument in their pliability that this is not something that's germane to this issue. It's very germane because everything is going to be context for what this jury heard in the making of the determination of the problem with the creditor. I do want to, while I have, I guess, a few minutes on this here, I do want to discuss a little bit about the strictness of this. Before I get to that, I just want to, just to conclude on the notion of this, it's our position that while the jury heard something, hearing something has to be looked at in terms of all facts and evidence. What was the type of effect would that sort of vague information have on the jury's deliberate process? We can't examine what it was. We can only look at the nature of what they were exposed to. Can we consider that none of the jurors admitted to bringing this up? And if we can consider it, is there any significance to it? Well, it's kind of an interesting argument that they bring up in their pliability about somebody must not have told the truth because all men can testify. But testimony is a lie, and we don't know who that person is. We don't know what he said or answered. I mean, I'm reluctant to say that, well, you know, since someone has probably not testified to what they said, QED must be a reversible error in the situation. I don't think this court can jump to that particular conclusion. If they were to do so, then it would require the court to basically look at everyone's testimony and say, well, who is the probable culprit? And I think that that just sort of contrasts the whole proceeding. I think that the jury has, I think that this court has to look at those, that that testimony is taken from what it is that they said. For what it's worth, each of these depositions, it's got at the end that they followed the law. Correct. Do you think that's permissible to ask a juror that question? Or is that outside the observation? You know, I think that one... And you can declare that. I'd argue that it is permissible. But actually, I think it's probably really not important because there's a presumption. As we know from the solicitor's particular point of speaking, there's a presumption that a jury would follow the instruction. So if anything, it's a certain message. I don't think that asking a juror whether they followed the law is the same as asking them what effect it's having on how you deliver. Had this been brought to the attention of the trial judge, do you think a mistrial would have been mandatory? No. I think a jury could be involved individually to determine what they've heard and then make that determination whether or not that that proceeding were tainted to the extent that the defendant received it. Presumably, they would give the same answers to the questions that were now before? Presumably, yes. There's some mention made that, well, a number of years have passed and the jury's memory is fading a little bit. Most people probably remember sitting on a jury trial of this nature. I suspect they're not going to be so forgetful about what happened to your deliberations that it's in the past. But that's all speculation. I'm not going to go there. I'm just going to say that this is what we have and this is what the jury says. With regards to the strictness of this, I do argue about the first one, and that is the obligations, the constitutional obligations of counsel. Rarely, I guess, in appellate advocacy do we really get this because about 95% of the time everything sort of rides and falls on credit. So if the court finds, obviously, that there's no due process violation, then it's a fact that there cannot be prejudices and, in effect, the assistance of counsel, I argue, collapses right there as both prongs need to be established. I do think, though, that there is an interesting concept here with regards to what an attorney's responsibilities are as they represent the punishments. The standard is whether or not an attorney performs an objectively reasonable level of assistance. The Supreme Court is defined as meaning that their representation falls in the scope of, quote, prevailing professional norms for representation of criminal defendants. Defendant of the five years has sort of peeked at me in the first place as, in effect, the assistance of counsel. I've been called lots of things with prosecutors. Socialist isn't one of them. But I think that to the extent that I'm drawing this dichotomy between the rich and the poor, let me go back to that a little. What I'm really attempting to argue is that in order to determine whether or not someone is performing within their expectations of counsel, it is a constitutional standard. There's no fixed determination of what a constitutional standard is, but it's a standard nonetheless. And I think the argument that I'm trying to make is that there is a distinction between an attorney who performs at a level of constitutional reasonableness and an attorney who may not do something because he didn't do as much as someone subjectively feels they paid for him to do. I think that's really kind of what plays into what I'm saying here, is that the defendant got more than what the guy who has Larry Brogan in his public defendant's account may have gotten in terms of what happened after the trial. It bears stressing that what happened was that after the trial, the defendant's attorneys hired an investigator with the objective of talking to the jurors to solicit opinions and observations and things of that nature. The state objective had nothing to do with an investigation or to do with, I guess, to see if there was anything important that came. 9 out of 12 wouldn't even talk to investigators. They're absolutely right. Three of them, one of whom, I believe it was Vicki Colombo, she didn't really want to talk much and she just gave a few tidbits. He talked about the case, didn't mention anything about this information he brought, and then Newsom, as we now know in the course of the history of this case, had brought it back and one of the jurors had mentioned this prior job that Brogan had. Brogan has now, I suppose, given two types of considerations. One is the standard of reasonableness under professional prevailing norms. So, what are the prevailing norms and what is considered reasonableness? We can break this into two parts. Prevailing professional norms is something that, although it defies an explicit definition, the Supreme Court has repeatedly referred to the ADA standards for general standards for criminal defense. Well, it's all in my dictionary and I appreciate it. If you want to finish your slide, thank you. I will. Yeah, if that's okay. Sure. One minute. Go ahead. I think I'm done. You are done. All I'm going to say is that, in that standard, the only thing that's laid out is that an attorney must essentially file a post-trial motion in order to preserve the defendant's rights for appeal. That has clearly appeared in this case. Obviously, the defendants themselves acknowledge that they did a good job in this case. They did what they had to do. They preserved the issues. They got this information that no one else was entitled to necessarily and they got it. They used it. They presented it. It was preserved. I think that they now have met the professional standards. They exceeded it. And so, the problem that happens when we start shifting this particular standard from constitutional reasonableness, then you start to see that the defendant doesn't get anything. It's better for the defendant to get something more than he's entitled to, but just didn't pan out what he wanted. So, I don't want to be social. I just want the playing field to be level and that the standard be a constitutional standard and not just a matter of what I think I should be getting for it. Alright, thank you guys. Let me try to simplify what seems to be a rather complicated and sporadic situation. Number one, the defendant received an unfair trial under due process standards because, not because there was a disclosure to all of the jurors of prejudicial information, because one juror deliberated throughout with pretty heavy stuff. More evidence of guilt than what was introduced during the trial. Not only did he receive an unfair trial under due process of law, he received an unfair process of review of that unfairness. Because, just a spoiler, there's no way that you would have pinned what you pinned had you known that a juror deliberated throughout this trial  and had been accused of sexual assault before and was facing criminal molestation charges again. And I appreciate Mr. Daly pointing out that reasonable inferences can be drawn from the evidence of this case. You don't have to consider the mental processes that are in those depositions. That's not what this case is about. It's about the one juror that defense counsel didn't find out about, the full truth about, and should have. And let me tell you why. Because the reasonableness standard is in Faulkner, Gleitner, in my mind, it says what, it's a standard of what would reasonably effective criminal defense lawyers do under the set of circumstances that they confront. And let me tell you what they would do. If they learned after talking to one juror, that he saw a protest and he told the other jurors, hey, he's been charged with some crime at some time in the past, I don't remember the nature of the charge, but I saw it on TV. He was telling the rest of these jurors, by the way, hey, the general public's being told that we're dealing with a serial offender when he disclosed the sexual nature of it. That was potentially prejudicial as well. But, circling back to what would reasonably effective assistance of counsel do, if they learned that information, they'd go and they'd find a broadcast. And these counsel did. And when they did, oh my God, the hair on the back of the neck of a reasonably effective criminal defense lawyer would feel this. My guy's going to get in the trial. If he disclosed to the rest of these jurors that information, because he would have deliberated secretly throughout the deliberations with it. And you know what they would have done? They wouldn't have hectored or pounded the whole jury panel. They wouldn't have had to subpoena every juror to find out this information. All they had to do was circle back to John Heath, who was willingly cooperative to talk to them, who they had never asked anything about broadcast, who didn't bring it up voluntarily, go back to him and ask, what do you remember, John, about a juror disclosing something after four hours of deliberations and a deadlocked jury room going on? To the jury panel. And John Heath would have told them. Well, yeah, he brought up the sexual nature of it. And then we would have known that one juror deliberated with poisonous, outside, extraneous evidence of guilt throughout these deliberations. And how did that affect the jury deliberations? Well, we can't prove it. We don't have to. All we have to do is say it had the possibility and probability of producing prejudice. It's incalculable what this juror did to the rest of the jurors thinking about the credibility of the accused versus the credibility of the defendant in those four hours. When he knew that he was dealing with someone that had been charged with sexual offense before and was facing sexual molestation charges again. Is it critical to your argument that what he said had some effect on the other jurors or is it simply enough that it had an effect on him? It is absolutely enough that Justice Spoma would have granted a new trial. I believe this court would have granted a new trial had this court known that one juror had outside information from that broadcast and deliberated throughout these broadcasts knowing that the defendant had a criminal history for the same offense for which he was charged. That one juror has changed the deliberations in this case. And whether the other jurors were affected by it or not, although I would say it's a reasonable inference to conclude that that juror didn't bring this up after four and a half hours of deliberations and a deadlock jury would have gone out with him as an actor. It's a reasonable conclusion from the evidence that he did it on purpose to try and influence this jury with what he believed to be additional evidence of guilt that was not a part of the trial record. And you know what? There was good explanation for that prior charge. There were good reasons why it was dropped. But the defendant didn't get to give them to the jury. He didn't get to defend himself on these charges. And in that regard, I do not believe it to be a reasonable inference from the evidence to conclude that because the juror heard that they were dropped, that the juror would react, oh, gosh, this guy gets charged a lot with unfounded charges. That's not a reasonable inference, but that's the argument the state's making. The reasonable inference is this, that one juror deliberated believing that he had additional evidence that corroborated the credibility of the accused, of the victim. And by the way, I went into great length in the brief to point out in this case the evidence, and this was a weak case. It was an accuser versus the accused. And all you have to do is read the arguments of Grinaldi, the prosecutor, and the arguments of White to realize that this was a one-on-one case, and the fact that a juror would learn that he's been accused of sexually assaulting someone before had a possibility of prejudicing and affecting the credibility. You did make that argument in your brief, but in the 2005 decision, this court found we cannot say the evidence in this case was closely balanced. And if you look why they said it, look at the sentence before that, in the opinion. And it says, identity wasn't even an issue. So we can find this is a closely balanced case. But of course identity wasn't an issue. I didn't do it. She did it, and I didn't do it. This isn't the law of the case? This isn't the law of the case. I mean, it's been decided by a panel of the appellate court. And do you want us to go back and question that part of the ruling? Can we do that? If it's wrong. There is an assumption on the ruling. But if this court looks at it and looks at all of the evidence in the case and says, it was wrong to say this wasn't a closely balanced case, it can do that. Is that critical to your decision here, that we question that ruling? I think if it was a less closely balanced case, even if it wasn't a very closely balanced case, I think the kind of poison that was introduced, extraneous to this case, creates a possibility, a probability of prejudice. And that's the test. It isn't whether this was closely balanced. It could be an overwhelming case. Do we owe any deference at all to the judge? Really? No. And let me speak to the fact that he relies on this court's reference to media exposure cases in its original Rule 23 article. He relies on it and says, well, an assertion of mere exposure to media does not establish prejudice. And that was a thrust of his ruling. He also went into the mental processes of all these jurors. That wasn't the right way to go. That was against the manifest way that the evidence did do that. Look at how he decided this case and you'll see. He absolutely belied the law. And the fact that you don't go into the mental processes, but circling back to the media cases, those cases, Lieberman and Szilagyi, were cases where jurors saw or the defendants saw jurors with the Chicago Tribune. And there was an article about the trial in the Chicago Tribune and they raised the fact that they were prejudiced or that they had caused the problem. But there was no proof of outside information in those articles. They were reports of the trial. Those cases weren't akin to what we have here. What we have here is a juror, the night before he goes into deliberations, watching a TV broadcast, that poisoned him in terms of the credibility assessment he had to make the next day. And he went into that jury for deliberations with that knowledge and deliberated, and how he deliberated affected and evaded the fairness of these deliberations. One thing that complicates this record was your point there that Judge Ickes went into the mental deliberations of the jury. Of course, you submitted depositions that had that in there without objection and asked him to consider it. And he went ahead and did it. Now, Mr. Daly, in his argument, I think, is telling us that he shouldn't have done that also. Right, that he shouldn't have considered the fact that the jurors followed the law. Well, then, is it your position... Although one juror deliberated with this knowledge and was asked, did anybody bring up seeing a broadcast, do you remember that one of the jurors thought that he broke his vow as a juror enough not to tell the truth about I'm a juror. Right. So these objections during that deposition, are you telling us he should have sustained them and not considered that information? If he had been asked to. I think... I think that this case was decided when it was established in evidence at that hearing from other jurors that yes, what the juror brought up was the fact that he saw a broadcast on TV that reported the defendant had been previously charged with sexual assault. Ask the notes. But what about those objections, were they valid? So we know what record he should have properly considered. Why wouldn't he have ruled on the objections? And he should have ruled what? And he should have ruled with regard to any of the objections that went into the mental processes that he couldn't consider. Okay. Okay? But now in terms of... Which way should... I guess I'd have to go through and ask each objection. I mean, the state of the record with regard to juror Jackson is juror Jackson has read the entire broadcast. And she, I think it was a female, she said, after hearing the whole broadcast, she said, well, it wasn't read to us, but yeah, that stuff was said. That's what I mean from the... Can everybody say one more thing? I want to say one thing. Judges, you've got to read their mind. Strickland v. Washington, and it's quoted many times for the but-for language in it. Okay? And that goes without saying, but there's another line farther on in the opinion that applies so apropos to this case. In that case, the Supreme Court wrote in Strickland, the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding being challenged. The ultimate focus here should be on the fairness of the appeal, the direct appeal, given the fact that this court didn't have it. That's the truth. Let me tell you something. We can't say that because an individual has the wherewithal to go out and talk to jurors, that once you find out that there's potential poison that criminal defense lawyers don't have the objective reasonable obligation to fight a fight and go find out the truth. They didn't even try to talk to another juror. Thank you. Thank you, gentlemen, for your arguments and briefs. We'll take the Mayor and the Vice Mayor. Next case is 09-66, People v. Fisher. Good morning, gentlemen. Mr. Keefe, do you want to begin? Do you want to go first? Okay. Fine. Mr. Keefe. Yes, sir. This is court reporting. Beautiful day. Mr. Keefe, I haven't argued the criminal appeal for a long time. I'm still out here in England. But it's been a long time. And my team asked me to read these briefs. Frankly, I just asked them if I could participate. And I asked them if I could participate because the Constitution is important here. It really is important here. We hear about constitutional arguments all the time. Everybody wants to try out the Constitution. The truth is that it's easy to say something is constitutionally facts. It's hard to find a set of facts where, really, the Constitution is implicated. And it's very hard to find a set of facts where the Sixth Amendment is implicated. And when I read these briefs, I thought, you know what, here's a set of facts where the Constitution is really implicated. And in order to persuade your audience that, in fact, the Constitution is implicated in this case, you said, I think there are two questions that have to be addressed. And the first question is this. With a proper record, which means this record, the record before this court, not the record that was before this court in 2005, but with a proper record, this record, was there a reasonable probability that this court's opinion back in 2005 would have been different? That's the first question. If the answer to that question is yes, then with all due respect, this is an honorable agreement. And then the answer to the second question is it is yes, it was subjectively reasonable that private counsel did not give you the record that you have said did not give you that record back in 2005. But if the answer to that question is yes, then I've actually, I think I'm in the hole. But that's for you to decide. I really believe that if we take a look at this evidence, is that we have to recap. Right now, there's one important issue. The fundamental fairness of the preceding, the previous proceeding, doesn't involve anything that happened in the trial court. The fundamental fairness involved what happened in this court in 2005. It's what happened in this court in 2005. And in 2005, this court got it right. Now, how can I say that you got it right? You got it right because you got the right basis on the record that you had in front of you in 2005. In the record that you had in front of you in 2005, you only knew one thing. You knew that one juror had testified that another juror had reported that Mr. Fisher had been previously acquitted on some charges in Jackson County. That's all you knew. That is all this court knew. And furthermore, this court knew, quote, he was not sure what the charges pertained to or not, close quote. That's what you knew. And your opinion in 2005 cries out for more information, more information that you didn't have because your Rule 23 opinion says, quote, the defendant's motion for new trial based on you showing that a juror had overheard a television newscast regarding prior charges and communicated that to the jury deliberation. The defendant's motion was based on you showing that a juror had overheard a television newscast that mentioned that the defendant had other charges in Jackson County. According to the record, the juror did not overhear or communicate the nature of those charges. And that's not true, but that's all you knew. And in addition to that, at the end, your opinion was so clear, you were just saying, tell us more. From the record before us, we cannot show you the probability of a prejudice, and this is critical, particularly when there is nothing in the reporting indicating that the jurors ever heard the nature of the charges. That was what you had before you. That wasn't true. It wasn't true. And the reason is that what the record now before us is this. Now what the record before us is, a juror announced in the jury room he had seen a news report the night before that the defendant had previously been formally charged with sexual misconduct in Jackson County, which had been dropped. That's before you know it. Another juror commented, I knew he had done this before. That's not before you. That's in this record. Let me ask you on that. Yes, sir. Can we properly consider that remark of the other jurors? Yes, sir. How? Because if one is subject to an evidentiary hearing, which is this court order. It was subject to discovery depositions that were taken. Correct. That were not supervised. Correct. That objections were made and never ruled on. Correct. And who had the burden of getting those objections? Who was? OK. I want you to answer your question. No, I agree. No, I want to answer it. Actually, I think it's a great question. Both sides did because they both made the same objection. Correct. And neither of them asked for a ruling. And now we've got a record with, at some point, I may ask both of you what actually is admissible because there is a presumption. They told the trial judge, take the objections with the depositions. Correct. Are we to presume, then, that the trial judge normally follows the law and the evidence? Well, under the law, we get a bench trial, not a jury trial, in a bench trial. Correct. So it kind of gets us back to the beginning. Correct. But I don't want to confuse it too much, which I have. But are you about to say that anything in that discovery deposition, the trial court and us can rely on or face our decisions? Isn't that right? Anything, even if it's truly objectionable? Because the answer to that question is yes, because of just that reason. Which is that if, in this instance, someone wanted to object to the discovery deposition, In a civil case. In a civil case. Right. Yeah. I know. This is pretty much it. But in a civil case, judge, the objections that are made in a civil case, it is the burden of the objector to bring those to the detention of the trial court and get a ruling on them. Now, typically, in a trial lawsuit, you're on your way to the interview. Well, heck, we get them either free trial, we're here to try the case, or we're forced to try it. It's just that, for example, in a civil case, if I had a deposition of a party, I would say, I agree with this. This is an issue. And then the other side might say, well, I'm going to go back to that, and then we would approach the trial court and rule whether I agree or whether I do not agree. In a civil case, instead of objections to the discovery deposition, in a civil case, objections to the form of a question must be made at the time, or they are otherwise made. Objections is in place to the truth. In reality, the judge is to say, what happens with those? Is to say, those are preserved. Preserved for what? Preserved for ruling by the trial court. Preserved for ruling by the trial court. It would be that. And I think that for those who are taking issue with that evidence, we're not taking issue with the discovery deposition. OK. Thank you. So there was no agreement that the parties submitted the discovery depositions, and allowing the court to consider only the admissible evidence that's contained within it. I'm not aware of any such agreement in the record. Anyway, I think the record is that it's submitted and the statement is subject to the objection. The prosecutor's just said, potentially, if you want to take that approach, I'd ask how you would presume that the judge would consider the objection. But there was no ruling on the objection. Right. Don't want to take any more of your time. Go ahead. Hold on. I'm not sure. But having said that, the only other thing I would point out is the debate on the threat. And really, the other thing is, of course, he said the jury didn't discuss. There's no question the jury discussed by the parties extra for three minutes. Or thereabouts. And the reality of this is that at amendment, this is the end. There's no dispute that the problem is that way. The news clip itself was amended for the jury. The matter certainly was admitted, though, and it is in evidence. OK? It is in evidence. And what the news clip said was, not to prove the truth of it, but to show what was heard. The news clip said, this girl, the previous police victim, was 12 years old when she alleged that Mr. Fisher sexually molested her not once, but twice. Henry Fisher manages and owns several rental properties in the Carbondale area, mainly housing students. He was charged with hominization and sexual assault by one of his female tenants in 1994. These charges were later dropped. Now Fisher is back in court facing sexual molestation charges again. Now, there's no question, regardless of what rulings there were around the depositions, there's no question that one of the jurors served and brought that knowledge into the jury. He would have held that knowledge, from all of the other jurors who served that knowledge, before he enlisted. Now, that's what this record shows. That's what this record shows. And of course, what I have to ask is this, honestly, your Honor, is this. What would have happened if during the course of that trial, let's go back to the trial. If during the course of that trial, is that when that jury came in and said, hey, you know, I saw something on TV last night. That's what it's all about. I saw something on TV last night that Mr. Fisher was previously charged with a sex offense, but it was dropped. Now, at that point, what was the duty of the other jurors? Wasn't it their duty at that point, when somebody knocked on the door and said, I'm going to bring the bailiff in here? And what would have happened if the bailiff had come in and communicated that to the trial jury? Back at the time of that trial, what would have happened? They missed the trial. And the reason that I know it would have been a missed trial is because the judge in Williamson County would have been indicted by the jurisprudence of this court. And the jurisprudence of this court has written prolifically on the proof of prior criminality and the preciousness of that. Quote, people versus men. It carries an overwhelming ability to dominate decision-making. It's way too lethal to convict, regardless of what the actual evidence to support the charge found that we can establish. Again, quoting from this court, you want to turn the court of Memphis versus the United States. It's not that the evidence is irrelevant. It's what? It's too much. It over-persuades people. And finally, people versus men. There is simply nothing better than full exposure of an accused human being. Let me ask you this. Since we're going to consider all these depositions, how do we consider the fact that the jury foreman immediately said we can't consider any of this evidence because of the instructions we were given? Each of the jurors said they followed the law at the end of their deposition. And there's a presumption they followed the jury instructions and they got IPI criminal 101, which said they couldn't consider this. Since all that's going to be in this, how does that fit in? Your Honor, I would suggest that my response to that would be this Court's Rule 23 order, written back in 2005, where you said, what was it? I don't understand. No, Judge Chapman said. In the second, Rule 23? No, that's the other. That's not the first one. The first one is that was me. That was me. Boom. Boom. Boom. You're going to hold my words against me now. I think that you guys are right. Do we have a problem with it being a 23? You know, I don't think so, Judge. I think it's still the law of the case. And I think we're dealing with this case. But that's the question. But here's what you said, Your Honor. You said, because the actual effect of the exposure when the minds of the jurors cannot be proven, the standard to be applied as whether there is such a probability in prejudice resulted in the trial is deemed inherently lacking in due process. That's the whole problem. That's where they make their mistake. And with complete respect to the Jesus, that's what you mean is a mistake. Because what they did, and what you and mine is denying to you, is just that they got into the state's briefing process. But all those briefings. Oh, they're showing the evidence. They say, don't do it. Oh, let's not think about it now. Who's not thinking about it now? I mean, that's the point. There are certain kinds of evidence. Once it gets in the room, it won't. Because what we are prohibited from doing, Judge, is that. And they all said they could follow the instructions. For heaven's sake, who in the world doesn't think that they thought they did something wrong? One guy says, I'm telling you the whole story. I don't want to get the other guy in trouble. The other 90 people refused to talk. I mean, Judge, everybody knew that once that got in the room, it won't. And so the answer to your question is that the jury's form is that, too. What if it was one? What if it was two men? What if it was one man? It doesn't make any difference. This court has said, this stuff is pointless. And once it gets in the room, it's in the room. It's in the cabinet. And they know that. It's trying to get into this argument of, look, I'm just going to admit to this. There's only six people who remember it. We all said that we made a decision based upon the law. If that was true, then how come one of them didn't say that the bailiff, hey, he's got this bullshit TV show that he saw last night. And it wouldn't have been a mystery. And we wouldn't be here. He'd have got to get convicted the second time around. But guess what? It was his high school. And so for all of those reasons, and that's why this whole matter of this thing would have been mandatory for the trials of judge at that time to declare mistrial. He had no discretion. He couldn't have voydeered each of the jurors themselves and said, we didn't hear it. Or I heard it, but I didn't think about it. I was going to follow your instructions. Your Honor, I understand what you're saying. And I would just say this. I would say that if the trial judge looked at this court's jurisprudence, I mean, this court has always been consistent in its belief in the proof of prior criminality, especially of the sexual nature. It's an over-persuasion. I mean, an over-persuasion. So to go back to what Justice Dunwoody said, Justice Dunwoody said, well, should we be listening and hearing and taking into account with respect to the discovery of that position? But, Your Honor, one thing is irrefutable. This is what the newscast said. And it is irrefutable. It's irrefutable. That somebody heard it. And somebody heard it. Finish your thought. OK. The only other thing I wanted to say was this. As the second point, which is ineffective assistance in counsel, is just real briefly, number one, as the state points out, it's too generic. We're not asking this court to announce a rule that lawyers have no responsibility to interview jurors. What we are saying, though, is just that a lawyer who paints a picture has a responsibility to complete the picture. A lawyer who starts down the road has a responsibility to get to the end of the road. And most importantly, if there is one thing which I believe speaks volumes to the ineffective assistance argument, it is this. This court ordered an evidentiary hearing. And this court ordered an evidentiary hearing because this court won the whole story. And now this court has told the story. And the Constitution respects the, I believe, requirements of this picture to give it another life. Yeah. Thank you very much. Thank you. Thank you. David. Good morning. My name is David Cooper. And I'm a counselor. I want to talk about depositions first here a little bit. You know, it's probably really not the best way to proceed in this case by doing depositions outside the control of the court, the judge. And I don't dispute some of what Mr. Keefe says. I do, however, want to express a little bit of confusion about what's being said here. I'd start just by framing what the constitutional standard is when we talk about information coming into the jury room  It's an established principle of law that a reviewing court or any sort of court review can consider the deliberative process of the jury. The tension here, of course, is that it's also permissible to introduce into evidence the fact that the jury was exposed to information that was outside of what was presented in the trial. And in this case, the exposure related to a prior charge that the defendant had. I'll talk about that a little bit more in a moment. The way the Supreme Court settled this particular inquiry was to say that, well, any time a jury is exposed to information, it is prejudicial. It has to be, therefore, shown, however, that it wasn't something that affected the jury's, it wasn't the type of information that would affect the jury's processes to the extent that the defendant suffered an inherent lack of due process. And that is the probability of prejudice is a way of describing things such as syllogy, holy poems. Now, it's both a literal and an exacting standard. It's literal in the sense that you look at information as presented or as its defendant given to the jury. It's exacting to the extent that it is also something that must establish the probability of prejudice. Probability is not possibility or suggestion of. So what the result of that is is a bit confusing because what we have is information. And information is never something in the real world that exists in a vacuum. It only exists in context of how a jury considers it. What the Supreme Court case has said is that you can't look at how the jury considers it. You just have to look at the information. Now, I think perhaps I, and I don't think the defendant had to do this on his own, sort of taken this information and kind of used it a little bit. And it's hard not to do so, particularly given the way the information was presented in this case. My confusion is a bit that I've been castigated by page after page in the library for violating the tenets of holy and syllogy. And yet here we're being told that all this stuff was visible because we didn't advance some ruling out of objection. Let me say it like this, because in the end, what was the case? Well, certainly the appeals of the Supreme Court. In the end, inquiry begins and ends with what the information was. Everything else just stands. So I don't think that we can argue it. I don't think the defense can argue it. I don't think this court can consider it. I think to do so would violate what the Supreme Court has said. Irrespective of how it was presented in the depositions, it doesn't make it any more relevant and approvative to the legal issue involved. And I think to consider it beyond that would be inviting probably a quick reversal by a higher court. So that being stated, I do think that this court needs to look at the depositions narrowly in the sense of what was the information that the jurors perceived to occur. That's really the end and the beginning of what will constitute whether or not there is a probability of prejudice, such that the proceedings are inherently likely to be problems. Before I discuss the jurors very quickly, I do want to point out one thing. At the time of the post-convention hearing, there were really two issues. There was a defendant's argument that there was a violation of due process. There was a second argument that there was a claim of ineffective assistance of counsel, which itself implicates the two-pronged strictness here, the professional competence and also the prejudice. The defendants here appeal on strictly the ineffective assistance of counsel argument. And that's fine. By doing so, I believe that the decision then will have to rely upon proof of both prongs, because that is what strictness requires. I will quote this argument, however, in our reason basically discussing the court's ruling as a whole, because I think that the ruling on the prejudice pronged and stricten assessment, due process argument, are really close to it. Now, when you use strict effects to the core of what the jury heard, it's not really a very difficult consideration to parse out what they heard. 11 jurors were proposed. There were five jurors, Sims, Sikorski, Smith, Walker, and Holman. Who testified did they hear anything? The other six jurors heard something. And what they heard varied to some degree. Vicki Colombo heard a juror mention of sex offense, prior sex offense. She can recall anything beyond that. Kenneth Wilford, a prior charge of something or another, and he's been acquitted of a charge of drug. John Heath, who was the one who supplied the affidavit, which kept the ball rolling in the prosecution process, he testified consistently with his affidavit that there was a prior sex offense that had been dropped. Fonielle Jackson, there was a charge of sexual nature. I don't even remember if it was a male or a woman or whoever it was said. I just thought I remembered. Cheryl Humber, she walked into a conversation about a charge being dropped against the defendant. She said it might have been sex-related. She couldn't really recall. And Stephen Newsome, who, although at the time of the post-trial motion hearing, couldn't recall anything regarding the type of offense it was, said it may have been a charge of sex-related offense. That's really the sum of the arguments. So you've got five jurors in anything. Six of her kind of did something. Now, let's talk about these audio tapes for the broadcast of the television. These weren't, this wasn't played to the jury. They didn't hear this. Anything that the jury heard, anything that the jury received came by way of what they testified to in these depositions. Did one juror hear that? No. No. Well, what happened was, they did, in their reply to me, they quote Claudine L. Jackson, who they characterized as essentially agreeing with basically the sum total of everything that was said in this broadcast. However, if you really look at what his testimony was, he was very vague about it. It was a response to the yes question and the leading question. We have that here. The affidavit of, there's only one affidavit, so he's got, let's see, one of the jurors indicated that he had seen the television broadcast the night before and followed it. And there's a reasonable assumption with the broadcast that there's something wrong with that. There's nothing, there's actually a reasonable assumption. That's the testimony. The point of the matter is that we're not going to deny that that had been brought up, at least her testimony. However, we are denying, vehemently denying, that any of the jurors heard what the defendants here claimed what was the content of that audio, that television recording to begin with. Throughout the defendant's brief, they characterized what the jury heard as evidence of the defendant's prior sexual molestation charges, sexual assault charges, things of that nature. Not a single juror who testified in these depositions said anything close to that. It's not a irrelevant suspicion. There's a big difference between a sex-related charge, I think, and sexual assault, sexual molestation, kids being molested. I mean, that's pretty heavy stuff. That, I think, plays very strongly into the question about the probability of prevalence here. Now, is it okay if we come to the conclusion that 11 out of 12 of them weren't affected by this broadcast, but one of them was? Would one of them be enough? In the sense that you say, affected in the scope of the parameters of probability of presence, yes, the jury verdict is tainted. There could be no end result from that. It's not a question of the majority was disregarded. It's our position that it didn't affect anyone in that sense, because just by looking at, essentially, the raw fact that there was a therapy. And really, if I could argue off-deposition in everything that was said, my case would be stronger and easier. So I'm not doing myself any favor in what I am ensuring that this court understands what the proper legal thing is, because it's got to be that way, because it's going to be looked at again. So even under that standard, we have approximately half the jurors in here, and the ones that did hear it, we heard something related to sexual assault. Some may have heard something, but that was about it. They didn't hear any of the particulars. They didn't hear anything about the charge. It was all very vague. They didn't hear anything in terms of sexual assault or anything like that. Now, I want to talk about Jared Heath. Heath stated that there was a minus, quote, unquote, that it was a charge of child predatory nature. I take that for what it's worth. I don't even know what a minus set means. He never came out and said that that's a negative set. If that was the impression of other people's thought, it wasn't articulated. I'm assuming that was admissible anyway. On any event, I know Jared Heath is not reading any of the words in my mind. Take it for what it's worth. But we do know that none of the jurors were able to identify exactly what this particular juror said. Now, I do need to note the fact that a number of the jurors heard this in the context of an acquittal. Now, what defendants are arguing in the file is that, well, the state, this is an astonishing argument, that somehow the fact that defendants acquitted should have any bearing on this because I believe they stated in their brief that it's only fair for a jury to be exposed to something about prior charges and prior arrests and things of that nature. Well, I don't agree with that particular principle. I disagree with the application of this particular case. And the reason for that is that this isn't really just a prior charge or a prior arrest. It's also either an acquittal or a drop charge or something. So, what the jury hears, let me state this, in the defendant's brief, we are told a number of times that this jury is now looking at this information that they've been presented and having come to the conclusion that this defendant is a creditor, he's a sexual creditor. I think that, looking at that, I think particularly heightens the role of the notion that the defendant had been acquitted or had been charged with a drop or hiring law acquittal because how does one become a creditor when they've been exonerated? These are lay people, okay, and they don't know necessarily the nuances that we know about the difference between acquittal or drop charges. All I hear is that it's been accused before and it's been proven. So, it is not equally likely, if not more likely, that evidence of a prior drop charge or acquittal can't be defended as someone who's unfairly prosecuted or unfairly charged, rather than someone who's a sexual creditor and we're going to go back and say, well, shoot, if he did it once, the problem wouldn't be there. So, I do dispute the defendant's argument that this is not something that's germane to the issue. It's very germane because everything is going to be context for what this jury heard in making the determination of the problem of the creditor. I do want to, I guess, a few more comments in here. I do want to discuss a little bit about the strictness of this. Before I get to that, I just want to, just to conclude on the notion of this. It's our position that while the jury heard something, hearing something has to be looked at in terms of all effects. What was the type of effect would that sort of vague information have on the jury's deliberative process? We can't examine what it was. We can only look at the nature of what they were exposed to. Can we consider that none of the jurors admitted to bringing this up? And if we can consider it, is there any significance to it? Well, it's hard to make an interesting argument if you bring it up in the refineries about well, somebody must not have told the truth because all the managers testified. But, testimony is like this. And we don't know who that person is. We don't know what he said or anything. I mean, I'm reluctant to say that, well, you know, since someone was probably not fast enough in what they said, she was either must be a reversible error in the situation. I don't think this court can jump to that particular conclusion. If they were to do so, then it would require the court to basically look at everyone's testimony and say, well, who was it that was probably the culprit? And I think that that just sort of infests the whole procedure. I think that the jury has to, they have to look at that testimony and take it for what it is that they say. For what it's worth, each of these depositions has got at the end that they follow the law. Do you think that's permissible to ask a juror that question? Or is that outside, is it Hobbs? I, you know, I think that one... And you can... I would argue that it is permissible. But actually, I think it's probably really not important because there's a presumption as we know from the syllogism of that particular point of statement. There's a presumption that a jury would follow the instruction. So, if anything, it's surplusage. I don't think that asking the juror whether they follow the law is the same as asking them what effect it has on the cabinet and how it's delivered. Had this been brought to the attention of the trial judge? Do you think that this trial would have been mandatory? No. I think a jury could be and then make that determination whether or not that that proceeding were changed to the extent that the defendant can receive a parole. Presumably, they would give the same answers to the questions that were now before. Presumably, yes. There's some mention made that it was in a number of years in the past and the jury's memory has faded a little bit. Most people probably remember sitting at a jury trial of this nature. I suspect they're not going to be so forgetful about what happened to the deliberation. That's all speculation. I'm not going to go there. I'm just going to say that this is what we have and this is what the jury's done. With regards to the strict responsibility, I do argue about the first problem, that is the obligations, the constitutional obligations of counsel. Rarely, I guess, in this case, do we really get this because about 95% of the time, there are these sort of riders who fall on the prejudice. If the court finds that there's no due process violation, then the fact that the defendant is prejudiced, in effect, assists the counsel argument, collapses right there as both prongs need to be established. I do think, though, that there's an interesting concept here with regards to what an attorney's responsibility is. As they represent defendants. The standard is whether or not an attorney performs an objectively reasonable law of assistance. The Supreme Court is defining it as meaning that their representation falls in the scope of, quote, prevailing professional norms for representation of criminal defendants. Defendant's reply to me is sort of keeping me in the first place. I've been called lots of things a prosecutor. A socialist isn't one of them. But I think that to the extent that I'm drawing the dichotomy between the rich and the poor, let me pull back on that a little. What I'm really attempting to argue is that in order to determine whether or not someone is performing within their expectations of counsel, it is a constitutional standard. There's no fixed determination of what a constitutional standard is. But it's a standard nonetheless. And I think the argument I'm trying to make is that there's a distinction between an attorney performing at a level of constitutional reasonableness. An attorney who may not do something because he didn't do as much as someone subjectively feels they paid for him to do. I think that's really kind of what plays into what I'm saying here. The defendant got more than what the guy who has Larry Broeking in the public defender's account may have gotten in terms of what happened after the trial. It bears stressing that what happened was that after the trial, the defendant's attorneys hired an investigator with the objective of talking to the jurors, I think, to disclose opinions and observations and things of that nature. The stated objective had nothing to do with an investigation. It had more to do with, I guess, to see if there was anything important in the case. Nine out of twelve wouldn't even give a talk to the investigators. Is there absolute right? Three of them. One of whom I believe it was Vicki Colombo. She didn't really want to talk much and she just gave a few tidbits. He talked about the case, didn't mention anything about this information being brought to us from them. Newsome, as we know in the course of the history of this case, brought up the fact that one of the jurors had mentioned this private child. I've broken this down, I suppose, into two types of considerations. What is the standard of reasonableness under professional prevailing norms? What are the prevailing norms? What is considered reasonableness? We can break this into two parts. Prevailing professional norms is something that, although it defies an explicit definition, the Supreme Court has repeatedly referred to the ADA standards for journalistic and criminal defense. Well, it's all good with your honors and I appreciate it. All I'm going to say is that under that standard, the only thing that is laid out is that an attorney must essentially file a post-trial motion in order to preserve the defendant's relevance for appeal. That was clearly adhered to in this case, obviously, and the defendants themselves acknowledged, I think, a good job in this case. They did what they had to do, they preserved the issues, they got this information that no one else was entitled to necessarily, and they got it, they used it, they presented it, it was preserved. I think if they not only met their professional standards, they exceeded it. The problem I have is when we start shifting this particular standard to constitutional reason, then we do start seeing that the defendant doesn't get anything. It's better for the defendant if he gets something more than he's entitled to, but just didn't pan out for a while. So, I don't want to be social, I just want the playing field to be level, and that the standard be a constitutional standard, and not the standard of what I think I should be aiming for. Thank you. Thank you. Let me try to simplify what seems to be a rather complicated and sporadic situation. Number one, the defendant received an unfair trial under due process standards because, not because there was a disclosure to all of the jurors of prejudicial information, because one juror deliberated throughout with pretty heavy stuff. More evidence of guilt than what was introduced during the trial. Not only did he receive an unfair trial under due process of law, he received an unfair process of review of that unfairness. Because Justice Fulmer, there's no way that you would have pinned what you pinned. Had you known that a juror deliberated throughout this trial knowing that the defendant or believing that the defendant had been accused of sexual assault before and had was facing criminal molestation charges again. I appreciate Mr. Daly pointing out that reasonable inferences can be drawn from the evidence of this case. You don't have to consider the mental processes that are in those depositions. That's not what this case is about. It's about the one juror. The defense counsel didn't find out about it. The full truth about it. And should have. And let me tell you why. Because the reasonableness standard is in Faulkner, Lettner, and Langley. It says what? It's a standard of what would reasonably effective criminal defense lawyers do under the set of circumstances that they confront. And let me tell you what they would do. If they learned after talking to one juror that he saw the broadcast and he told the other jurors hey, he's been charged with some crime sometime in the past I don't remember the nature of the charge, but I saw it on TV. He was telling the rest of these jurors, by the way, hey, the general public's being told that we're dealing with a serial offender when he disclosed the sexual nature of it. That was potentially prejudicial as well. But circling back to what the reasonably effective assistance of counsel do, they learned that information. They'd go in and find the broadcast. And these counsel did. And when they did, oh my God, the hair on the back of the neck of a reasonably effective criminal defense lawyer would realize, my guy's going to get him in trial. Here, he disclosed to the rest of these jurors that information because he would have deliberated secretly throughout the deliberations with it. And you know what they would have done? They wouldn't have hectored and pounded the whole jury panel. They wouldn't have had to subpoena every juror to find out this information. All they had to do was circle back to John Heath, who was willingly cooperative to talk to them, who they had never asked anything about broadcast, who didn't bring it up voluntarily. Go back to him and ask, what do you remember, John, about a juror disclosing something after four hours of deliberations and a deadlocked jury vote going out to the jury panel? And John Heath would have told them. Well, yeah, he thought of the sexual nature of it. And then we would have found that one juror deliberated with poisonous outside extremes elements of guilt throughout these deliberations. And how did that affect the jurors? Well, we can't prove it. We don't have to. All we have to do is say it had the possibility and probability of producing presence. It's incalculable what this juror did to the rest of the jurors thinking about the credibility of the accused versus the credibility of the defendant in those four hours when he knew that he was dealing with someone that had been charged with sexual offense before and was facing sexual molestation charges again. Is it critical to your argument that what he said had some effect on the other jurors, or is it simply enough that it had an effect on him? It is absolutely enough that Justice Spoma would have granted a new trial. I believe this court would have granted a new trial had this court known that one juror had outside information from that broadcast and deliberated throughout these broadcasts knowing that the defendant had a criminal history for the same offense for which he was charged. That one juror has changed the deliberations in this case. And whether the other jurors were affected by it or not, although I would say it's a reasonable inference to conclude that that juror didn't bring this up after four and a half hours of deliberations and a deadlocked jury would have gone out as an actor. It's a reasonable conclusion from the evidence that he did it on purpose to try and influence this jury with what he believed to be additional evidence of guilt that was not a part of the trial record. And you know what? There was good explanation for that prior charge. There were good reasons why it was dropped. But the defendant didn't get to give them to the jury. He didn't get to defend himself on these charges. And in that regard, I do not believe it to be a reasonable inference from the evidence to conclude that because the juror heard that they were dropped that the jury would react, oh, gosh, this guy gets charged a lot with unfounded charges. That's not a reasonable inference, but that's the argument the state's making. A reasonable inference is this, that one juror deliberated believing that he had additional evidence that corroborated the credibility of the accused, of the victim. And by the way, I went into great length in the brief to point out in this case the evidence, and this was a weak case. It was the accuser versus the accused. And all you had to do was read the arguments of Grinaldi, the prosecutor, and the arguments of White. To realize that this was a one-on-one case, and the fact that a juror would learn that he had been accused of sexually assaulting someone before had a possibility of predestining the credibility. You did make that argument in your brief, but in the 2005 decision, this court found we cannot say the evidence in this case was closely balanced. And if you look why the sentence, look at the sentence before that, in the opinion, and it says identity wasn't even an issue. So we can't find this as a closely balanced case. But of course identity wasn't an issue. I didn't do it. She did it, and I didn't do it. This isn't the law of the case. This isn't the law of the case. I mean, it's been decided by a panel of the appellate court. And you want us to go back and question that part of the ruling. Can we do that? If it's wrong. You never can. But if this court looks at it and looks at all the evidence in the case and says it was wrong to say this wasn't a closely balanced case, it can do that. Is that critical to your decision here, that we question that ruling? I think if it was a less closely balanced case, even if it wasn't a very closely balanced case, I think the kind of poison that was introduced, extraneous to this case, creates a possibility, a probability of prejudice. And that's the test. It isn't whether this was closely balanced. It could be an overwhelming case. Do we owe any deference at all to the judge if this is a ruling? No. And let me speak to the fact that he relies on this court's reference to media exposure cases in its original Rule 23 article. He relies on it and says, well, an assertion of mere exposure to media does not establish prejudice. And that was a thrust of his ruling. He also went into the mental processes of all these jurors. That wasn't the right way to rule. That was against the manifest way that the evidence is doing that. Look at how he decided this case, and you'll see. He absolutely belies the law. And the fact that you don't go into the mental processes, but circling back to the media cases, those cases, Lieberman and Estolano, were cases where the defendant saw jurors at the Chicago Tribune. And there was an article about the trial in the Chicago Tribune, and they raised the fact that they were prejudiced by it, or that it had caused a problem. But there was no proof of outside information in those articles. They were reports of the trial. Those cases weren't akin to what we have here. What we have here is a juror, the night before he goes into deliberations, watching a TV broadcast, that poisoned him in terms of the credibility assessment he had to make the next day. And he went into that jury group of deliberations with that knowledge and deliberated, and how he deliberated affected and evaded the fairness of these deliberations. One thing to complicate this record was your point there that Judge Daly had no deliberations of the jury. Of course, you submitted depositions that had that in there, without objection, and asked him to consider it. And he went ahead and did it. Now, Mr. Daly, his argument, I think, is telling us he shouldn't have done that also. He shouldn't have considered the fact that the jurors followed the law. Well, then, is it your position... Although the one juror who deliberated with this knowledge and was asked, did anybody bring up seeing a broadcast, do you remember that one of the jurors thought that he broke his vow as a juror? No. Not to tell the truth about how I'm a juror. So these objections during that deposition, are you telling us he should have sustained them and not considered that information? I don't think... I think... ...